CYRUS B. WOODMAN AND ELIHU B. WASHBURNE v. THE AUDITOR GENERAL, THE TREASURER OF MACKINAC COUNTY AND THE SUPERVISOR OF MORAN TOWNSHIP

SAME v. SAME, SUBSTITUTING SUPERVISOR OF NEWTON.

SAME v. SAME, SUBSTITUTING SUPERVISOR OF HENDRICKS.

*Taxation—Review of assessments—Collection of taxes enjoined.*

1. The listing of taxable property is clerical work; but the ascertainment of its value is judicial, and requires the supervisor's judgment under his official oath. How. St. § 1019.

2. Every tax payer was entitled under How. St. § 1020, to an opportunity to see how his property had been assessed and to show that the assessment was illegal or unjust.

3. Injunction lies to restrain the collection of taxes where the opportunity to ascertain the amount of the assessment, and to be heard as to its fairness, has been withheld.

Appeal from Mackinac.    (Steere, J.)    Oct. 24.—Oct. 31.

---

[1] The amendment was by adding the words "Dated October 19, 1881."

INJUNCTION bills to restrain sales for taxes. Complainants appeal. Reversed.

*Thomas J. O'Brien* for complainants.

*Norris & Uhl* for defendants.

SHERWOOD, J. Bill of complaint was filed in each of the above-mentioned causes on the 27th day of September, 1880, in the circuit court for the county of Mackinac, in chancery, for the purpose of enjoining the collection of certain taxes, amounting to about the sum of $1529, alleged to have been illegally assessed against the real estate of the complainants situate in the county of Mackinac and in the townships named in the several bills of complaint in these causes. The taxes complained of in the first case were those assessed and levied for the year 1878, and those in the other two cases for the taxes assessed and levied in the year 1879.

In the first of these cases complainants ask relief on the grounds—*First,* the assessment roll was not made in time for review, and complainants had no opportunity for review. *Second,* because complainants' lands were too highly valued in the assessment roll; that it showed complainants' lands valued higher than other lands of equal value; that no valuation or assessment was ever actually made by the supervisor; and that he had no knowledge of either the lands or their value in many instances. *Third,* that the neglect of the supervisor to inform himself, and his refusal to be informed, in regard to the lands of complainants and their value, and the intrusting the listing of complainants' lands and their valuation in the assessment roll to another, thereby largely increasing their assessed value above what it should have been, operated as a legal fraud upon the rights of complainants, and rendered the assessment void.

A careful inspection of the record shows, we think, that the facts stated by complainants' counsel, and relied upon to invalidate the tax complained of, are substantially true.

In the absence of the parties, or their neglect during the time the assessment roll is required by law to be made, the supervisor is required to examine the property, and is authorized to set down and assess the proper amount according to his best judgment. See Comp. L. § 985. [How. St. § 1019.]

The listing of the property is clerical, but the ascertaining and determining its value is judicial, requiring the judgment of the supervisor under his oath of office, and cannot be dispensed with in making a valid assessment roll. The evidence shows that no such roll was made in this case; that the supervisor never made such examination of the lands of complainants nor ascertained nor determined their value in the assessment roll.

By Comp. L. § 986 the supervisor is required to be present at his office on the third Monday in May and the next two days thereafter, for the purpose of reviewing his assessments; and any aggrieved party has the right to appear on either of those days before him and state his grievances; and the supervisor is authorized to make such alterations as may be shown to be just and proper. [How. St. § 1020.]

The record discloses the fact that the complainants sent their agent, at considerable expense, to the supervisor for the purpose of examining the assessment roll and showing him the true value of the complainants' lands assessed; that said agent, learning that no assessment roll had been prepared on the days fixed by the statute for review, subsequently went to Mackinac in the month of August, and there met the supervisor of Moran township, by whom he was informed that he had not yet completed his assessment roll, and had not yet seen or determined the value he should place upon complainants' lands therein, and that thereupon said agent proposed to be sworn as to the quality and value of said lands for the purpose of reducing the assessment below that of the previous year, claiming that such assessment was too high. The supervisor, in reply, told complain-

ants that it was too late; that he could not take the statement of complainants' agent under oath upon the subject; that he had no personal knowledge of the lands, but thought he should assess them higher than they had been the previous year.

It is very clear that the tax-payer under our statutes must be allowed, at some time before the assessment roll is fully completed, the opportunity of seeing what assessments have been made against his property, and the privilege of showing to the supervisor that the proposed assessment is for any cause illegal or unjust; and it seems quite apparent, from the record in this case, that no such opportunity, although desired, was afforded to the complainants. It further appears that complainants were at all times willing to pay whatever might be a proper and legal tax upon their property, and they claim that the taxes against which they ask relief are illegal, unequal, excessive and unjust.

We can see no principle of law or equity upon which the legality of the taxes in this case can be sustained. The other two cases rest upon substantially the same state of facts, and, by the agreement of counsel for the respective parties, were argued at the same time with the first, both at the circuit court and in this Court, and, it is conceded, must abide the decision made in the first case. Several other questions are discussed in the briefs of counsel, but as those mentioned are all that are necessary to a final disposition of these cases we forbear their consideration.

The circuit court dismissed the bills in all the cases and dissolved the several injunctious issued therein.

The decree of the circuit court in each of the cases must be reversed, and a new decree entered in each case in accordance with the prayer of the complainants' bill with costs of both courts, including, however, costs in this Court for but one hearing.

The other Justices concurred.

COOLEY, J. I concur in the opinion in these cases. The case of *Albany & Boston Mining Co. v. Auditor General* 37 Mich. 391, on which defendants rely, has little resemblance to this, and none at all in the principles which should govern. In that case the roll was not completed by the day fixed for a review, and in that particular the statute was not complied with ; but there had been no attempt to obtain a hearing on the assessment, and there was neither showing nor plausible pretense of injury. In this case the disregard of law and the wrong to complainants are equally manifest.